UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| STABILITY BIOLOGICS, LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) NO. 3:24-cv-1365 ) |
| MARIN ADVANCED WOUND CARE CENTER, | ) ) ) ) |
| Defendant. | ) ) |

# MEMORANDUM OPINION AND ORDER

Marin Advanced Wound Care Center ("Marin Wound Care") is a California medical provider that purchased human tissue products from Stability Biologics, LLC ("Stability Biologics"), a company headquartered in Nashville. (Doc. No. 1 ¶¶ 3-4, 8-9). Marin Wound Care has not paid for any of its orders, and Stability Biologics filed this suit to recover payment. (Id. ¶¶ 9-10).

Marin Wound Care moved to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). (Doc. No. 14). Stability Biologics opposes dismissal, citing the existence of a forum selection clause in its "terms and conditions." (Doc. No. 27). Marin Wound Care responds that it never assented to the "terms and conditions" that contain the forum selection clause; rather, Stability Biologics unilaterally imposed the terms and conditions by referencing them at the bottom of its invoices. (Doc. No. 30). Because there is no evidence that Marin Wound Care assented to the forum selection clause and waived its jurisdictional objection to Tennessee courts, Marin Wound Care's motion to dismiss will be granted.

## I. BACKGROUND

Stability Biologics is a licensed human tissue bank that provides "amniotic human tissue products" to doctors, hospitals and surgery centers for use on patients. (Doc. No. 1-4 ¶ 8). Marin Wound Care is a medical provider that uses human tissue products on its patients. (Id. ¶ 9). Between February 1 and February 21, 2023, Marin Wound Care placed three orders for Stability Biologics' human tissue products and paid for each of those orders. (Doc. No. 26-2 ¶¶ 6-7). Between February 21 and June 20, 2023, Marin Wound Care placed sixteen more orders, (Doc. No. 1-4 ¶¶ 12-13); however, Marin Wound Care did not pay for any of those orders, (id. ¶¶ 12-13, 18-20).

Stability Biologics emailed Marin Wound Care an invoice after each order was placed. (Doc. No. 26-2 ¶¶ 8-9, 15). At the bottom of each invoice, Stability Biologics included the following notation:

> Customer agrees to purchase and accept Stability Biologics, LLC Products in accordance with the terms and conditions contained at http://www.stabilitybio.com/terms-and-conditions. Stability Biologics, LLC objects to and rejects any and all terms proposed by Customer, whether contained in Customer's purchase order or elsewhere. If Stability Biologics, LLC and Customer have signed a separate, written agreement governing customer's purchase of Stability Biologics, LLC products, then the terms of that agreement shall govern.

(E.g., Doc. No. 1-4 at 33). If you go to Stability Biologics' website, as directed by the invoices, its terms and conditions are not readily accessible. (Doc. No. 14-1 at 4). There are only two ways to access the terms and conditions: (1) to manually type in http://www.stabilitybio.com/terms-and-conditions into the web browser; or (2) highlight the entire webpage, at which time the "terms and

conditions" link becomes visible.[1]  Id.  Once you reach the terms and conditions, they include a forum selection clause at Paragraph 14.[2]  Paragraph 14 provides:

> GOVERNING LAW; VENUE.  This Contract shall be governed by and construed in accordance with the laws of the State of Tennessee, without giving effect to its conflict of laws principals [sic].  Any demand, suit or cause of action arising out of this Contract shall be brought in a state or federal court located in Davidson County, Tennessee.  Customer hereby submits to the jurisdiction and venue of such court.

(Doc. 1-4 at 29-30).

Dr. Anthony Gordon, the owner of Marin Wound Care, represents that neither he nor any member of his staff "read, agreed to, acknowledged, acquiesced in, or otherwise interacted with," the terms and conditions.  (Doc. No. 18 ¶¶ 13-14).  Marin Wound Care admitted to receiving the sixteen invoices from Stability Biologics, (Doc. No. 26-3 at 5-10); but there is no evidence about when Marin Would Care received the invoices or whether Marin Wound Care (through its principal and agents) read the invoices.

To help the Court address Marin Wound Care's 12(b)(2) motion, the parties have provided three affidavits, (Doc. Nos. 18, 26-1, 26-2), and some discovery materials, (Doc. Nos. 26-3, 26-4).  Magistrate Judge Newbern allowed the parties to conduct limited jurisdictional discovery, (Doc. No. 23), so that they could address the personal jurisdiction question.

---

[1] The Court has visited Stability Biologics' website and confirmed that Marin Wound Care's representations about the website are true.  While these website issues do not affect the Court's decision, Stability Biologics may want to fix this problem if it wishes to rely on the terms and conditions.  Or better yet, Stability Biologics may consider providing its terms and conditions to prospective purchasers and having them agree to those terms before delivering its products.

[2] It appears that since Marin Wound Care was a customer in 2023, Stability Biologics has updated its terms and conditions and the forum selection clause that was located at Paragraph 14 is now located at Paragraph 16.  See https://www.stabilitybio.com/terms-and-conditions (last visited July 31, 2025).

3

## II. LEGAL STANDARDS

Courts may decide a 12(b)(2) motion, like the one filed by Marin Wound Care, "on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." Malone v. Stanley Black & Decker, Inc., 965 F.3d 499, 505 (6th Cir. 2020). If the Court rules without conducting an evidentiary hearing, the plaintiff bears the "relatively slight" burden of making a *prima facie* showing that personal jurisdiction exists. Id. When deciding whether the plaintiff has satisfied this burden, the Court may accept as true the: (1) allegations in the Complaint that "are uncontroverted by the defendant-movant," (2) "averments in the plaintiff's declarations (even if contradicted)," and (3) "defendant's undisputed factual assertions." See Ncontracts LLC. v. Holmberg, 2022 WL 17724148, at *3 (M.D. Tenn. Dec. 15, 2022) (summarizing applicable standards of review). When ruling on the papers, the pleadings and affidavits must be viewed "in [the] light most favorable to the plaintiff" and the court should not "weigh the controverting assertions of the party seeking dismissal." Peters Broad. Eng'g, Inc. v. 24 Cap., LLC, 40 F.4th 432, 437 (6th Cir. 2022).

## III. ANALYSIS

Stability Biologics concedes that the only basis for exercising personal jurisdiction over Marin Wound Care is the forum selection clause contained in its terms and conditions. (Doc. No. 27 at 2) ("The sole issue before the Court is whether the parties' Forum Selection Clause . . .confers upon the Court personal jurisdiction over Marin."). For its part, Marin Wound Care disputes having ever agreed to the forum selection clause. (Doc. Nos. 14 and 30). Therefore, the questions before the Court are: (1) was there a contract between Stability Biologics and Marin Wound Care;

4

Case 3:24-cv-01365    Document 35    Filed 08/04/25    Page 4 of 9 PageID #: 283

(2) was the forum selection clause part of the contract; and (3) if not, did Marin Wound Care later assent to the forum selection clause, thereby modifying the original contract.[3]

### i. Were there contract(s)?

State law governs whether a contract is formed. Acer Landscape Servs., LLC v. Lasiter & Lasiter Inc. PC, No. 3:23-CV-00531, 2023 WL 8357958, at *6 (M.D. Tenn. Dec. 1, 2023) (citing Langley v. Prudential Morg. Capital Co., LLC, 546 F.3d 365, 368 (6th Cir. 2008)). Both parties appear to acquiesce to the application of Tennessee law. (Doc. No. 27 at 13-16; Doc. No. 30 at 2-4). Therefore, the Court will not undertake a formal conflict of laws analysis.[4]

A contract for goods is governed by Tennessee's Uniform Commercial Code. See Hixson Hometown Laundromat, Inc. v. Rem Co., Inc., 2025 WL 1564808, at *5 (E.D. Tenn. Jan. 21, 2025). Contracts for goods over $500 must be in writing. See Monaco Indus., LLC v. Fomento Econ. Mexicano S.A.B. de C.V., 685 F. Supp. 3d 654, 668 (E.D. Tenn. 2023) (citing Tenn. Code Ann. § 47-2-201(1)). Here, every invoice issued to Marin Wound Care was for goods over $1,000, (see Doc. No. 1-4 at 32-49); and yet there are no written contract(s) signed by the parties. However, neither party raises the statute of frauds as an issue. See Edwards v. Collins, 2012 WL 112540, at *2 (Tenn. Ct. App. Jan. 12, 2012) (noting that the statute of frauds is an affirmative defense that must be raised by the parties). Importantly, Marin Wound Care admits that a contract existed.

---

[3] Stability Biologics' Opposition (Doc. No. 27) misses the boat. Rather than addressing Marin Wound Care's argument—that it never assented to the forum selection clause—Stability Biologics argues whether the forum selection clause is enforceable as a matter of public policy. (Id. at 13-20) (discussing whether it would be "unfair and inequitable" to enforce the forum selection clause). But the Court can only reach the question of enforceability if the parties agreed to the forum selection clause as a matter of contract law.

[4] Both Tennessee and California have adopted the Uniform Commercial Code to govern contracts for the sale of goods, see Tenn. Code Ann. § 47-2-201, *et seq.*, and Cal. U. Com. Code § 2102, *et seq.*, so it would be unlikely that there would a conflict between the two states' laws.

(Doc. No. 30 at 2). This admission remedies any statute of frauds problem Stability Biologics may have had. See Off Rd. Performance/Go Rhino v. Walls, 2002 WL 31259436, at *2 (Tenn. Ct. App. Sept. 16, 2002) (citing Tenn. Code Ann. § 47-2-201(3)(b)).

Because there is no statute of frauds problem, the Court can consider whether there was an oral or implied-in-fact contract. "A contract implied in fact is one that arises from 'a legal inference from the facts and circumstances of the case.'" Overstreet v. TRW Com. Steering Div., 256 S.W.3d 626, 632 (Tenn. 2008) (quoting Paschall's, Inc. v. Dozier, 407 S.W.2d 150, 154 (1966)). An implied-in-fact contract "must be based on evidence sufficient to show offer, acceptance, and intent to affect legal relations." Id. The evidence shows an implied-in-fact contract formed when Stability Biologics offered its product for sale and Marin Wound Care agreed to buy the product at a certain price.[5] Stability Biologics admits that it agreed to sell human tissue products to Marin Wound Care and that it delivered the agreed upon products. (Doc. No. 26-1 ¶ 6; Doc. No. 26-2 ¶ 8). The delivery of goods is an indicator that the parties agreed to the terms of the sale before delivery. Cf. Nanjing Textiles IMP/EXP Corp. v. NCC Sportswear Corp., 2006 WL 2337186, at *11 (S.D.N.Y. Aug. 11, 2006).

Based on the limited facts presented by the parties, the Court finds that either an oral or implied-in-fact contract existed between Stability Biologics and Marin Wound Care for the purchase of human tissue.

---

[5] Stability Biologics describes a complicated "consignment" arrangement with Marin Wound Care. (Doc. 1-4 ¶¶ 1, 11, 17). Regardless of how the relationship is labelled, what seems obvious is that shortly after Stability Biologics delivered its products to Marin Wound Care, it sent an invoice (for a specific agreed upon amount) and it expected to be paid.

### ii. Did the contracts include Stability Biologics' terms and conditions?

There is no evidence that at the time it agreed to purchase human tissue, Marin Wound Care simultaneously agreed to be bound by Stability Biologics' terms and conditions. Rather, Stability Biologics would email Marin Wound Care invoices that referenced the terms and conditions <u>after</u> Marin Wound Care placed its orders. (<u>E.g.</u>, Doc. No. 26-2 ¶ 15). Stability Biologics' decision to reference new contractual terms, including a forum selection clause, for the first time in an invoice presents a serious problem.[6]

The addition of terms materially altering an existing contract is only binding upon mutual assent. <u>See</u> 2 Williston on Contracts, § 6:22, at 6 (4th ed.) (Dec. 2005 update); <u>see also</u> <u>Metro. Alloys Corp. v. State Metals Indus., Inc.</u>, 416 F. Supp. 2d 561, 566 (E.D. Mich. 2006) (collecting cases). A forum selection clause is a "material alteration." <u>Id.</u> Courts around the country have confirmed that a seller cannot add a forum selection clause to an existing contract without the buyer's assent.[7] Courts, addressing nearly identical facts as those presented here, have also

---

[6] Stability Biologics does not argue that the invoices were "written confirmations" of an oral contract as set forth in the UCC. <u>Cf.</u> <u>Dicastal N. Am., Inc. v. Markowitz Metals Grp., LLC</u>, 633 F. Supp. 3d 999, 1014 (W.D. Mich. 2022). Where a party does not raise an argument in opposition to a motion, that argument is waived. <u>See</u> <u>Humphrey v. U.S. Attorney Gen.'s Office</u>, 279 F. App'x 328, 331 (6th Cir. 2008); <u>Doe v. Bredesen</u>, 507 F.3d 998, 1007–08 (6th Cir. 2007).

[7] <u>See</u> <u>Tourcats, Inc. v. Transp. Custom Designs, LLC</u>, 670 F. Supp. 3d 526, 534 (N.D. Ohio 2023); <u>Nw. 1 Trucking Inc. v. Haro</u>, 613 F. Supp. 3d 1081, 1099 (N.D. Ill. 2020); <u>J.D. Fields, Inc. v. Independent Enterprises, Inc.</u>, 2012 WL 5818229, at *7 (S.D. Tex. 2012); <u>Tre Services, Inc. v. U.S. Bellows, Inc.</u>, 2012 WL 2872830, at *3 (W.D. Pa. 2012); <u>Insteel Wire Products Co. v. Dywidag Sys. Int'l USA, Inc.</u>, 2009 WL 2253198, at *2 (M.D.N.C. 2009); <u>Trans-Tec Asia v. M/V Harmony Container</u>, 435 F. Supp. 2d 1015, 1025 (C.D. Cal. 2005); <u>One Step Up, Ltd. v. Kmart Corp.</u>, 1997 WL 391117, at *2 (S.D.N.Y. 1997).

confirmed that a seller cannot add new terms, like a forum selection clause, using an invoice.[8] The Court sees no reason to depart from these directly relevant, persuasive cases.

Because Stability Biologics unilaterally imposed its terms and conditions on Marin Wound Care in its invoices, it cannot rely on those terms and conditions unless it shows Marin Wound Care assented to the new terms.

### iii. Did Marin Wound Care assent to the terms and conditions?

Dr. Gordon, the owner of Marin Wound Care, avers that neither he nor his staff reviewed or assented to Stability Biologics' terms and conditions. (Doc. No. 18 ¶¶ 13-14). That averment is uncontroverted. Therefore, the only evidence shows that Marin Wound Care did not affirmatively assent to the terms and conditions referenced in the invoices and located on Stability Biologics' website.

---

[8] See Wainess v. Smilemakers, Inc., 2018 WL 6809654, at *4 (E.D. Mich. 2018) ("The court concludes that the forum selection clause contained in fine print on the back of the invoices is a material alteration and therefore is not a part of the contract between the parties."); Barrette Outdoor Living, Inc. v. Vi-Chem Corp., 2014 WL 3579297, at *4 (E.D. Tenn. July 21, 2014) ("[E]ven assuming that plaintiff received the terms and conditions on the back of the invoice, the forum selection clause did not become a part of the parties' contract because it was an additional term that materially altered the contract."); Construction Resource Group, Inc. v. General Technologies., Inc., 2013 WL 6284003 (D.S.C. Dec.4, 2013) (terms and conditions, including a forum selection, clause that were included on the back of an invoice were not a part of the parties' contract); Tra Indus., Inc. v. Valspar Corp., 2010 WL 2854251, at *5 (E.D. Wash. 2010) (the fact that invoices were repeatedly sent to the buyer containing terms and conditions does not mean that the buyers assented to those new, material terms); Belanger, Inc. v. Car Wash Consultants, Inc., 452 F.Supp.2d 761 (E.D. Mich. 2006) ("The forum selection clause at issue in the instant case was contained in fine print on an invoice mailed to Defendant only after the contract for the sale and installment of the Vector Wash system had been completed. By mailing the invoice to Defendant, Plaintiff was attempting to bind Defendants to terms and conditions that had not been previously agreed upon.").

What Dr. Gordon did not say, however, is whether he or his staff reviewed the invoices. Notably, when conducting jurisdictional discovery, Stability Biologics did not ask Marin Wound Care whether its owner or staff members reviewed the invoices. (Doc. No. 26-3 at 5-10). It only asked whether Marin Wound Care had "received" the invoices. (Id.). Perhaps the dearth of evidence is why Stability Biologics did not argue that Marin Wound Care constructively assented to the terms and conditions through the parties' course of dealing. See Bell, Inc. v. IFS Indus., Inc., 742 F. Supp. 2d 1049, 1053 (D.S.D. 2010) (a buyer's failure to object to the terms included with the invoice may suffice to bind the buyer to the seller's forum-selection clause based on the parties' course of dealing); K.K.D. Imports, Inc. v. Karl Heinz Dietrich GmbH & Co. Int'l Spedition, 36 F.Supp.2d 200, 203 (S.D.N.Y. 1999) (similar); see also New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG, 121 F.3d 24, 31 (2d Cir. 1997). Regardless, though, Stability Biologics failed to make a "course of dealing" argument, and the Court will not *sua sponte* consider one. See Humphrey, 279 F. App'x at 331.

Consequently, the Court cannot find that Marin Wound Care assented to Stability Biologics' terms and conditions when there is no evidence that Marin Wound Care even read the invoices.

## IV. CONCLUSION

For the reasons stated above, Marin Wound Care's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. No. 14) is **GRANTED**, and this matter is **DISMISSED**.

The Clerk of Court should close the file.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE